IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| INTERSTATE NARROW FABRICS, INC. ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | Case No. 1:02CV00146 | |
| ) | | |
| CENTURY USA, INC., d/b/a CENTURY ) | | |
| NARROW FABRICS; MURRAY FISHER; ) | | |
| JOHN I. WILD; and GEORGE H. SMITH, ) | | |
| ) | | |
| Defendants. ) | | |
| _____) | | |

MEMORANDUM OPINION

TILLEY, Chief Judge

This matter is now before the Court on Plaintiff's Motion for Appropriate Relief [Doc. #68]. Plaintiff requests that the Court strike Defendants' Answer,[1] based upon allegations that Defendants have made numerous and intentional misrepresentations to the Court. For the reasons set forth below, **Plaintiff's motion will be DENIED.**

I.

Plaintiff Interstate Narrow Fabrics, Inc. ("Interstate") is a North Carolina corporation that manufactures and sells knitted and woven elastic and non-elastic

---

[1] Interstate filed its Motion for Appropriate Relief on June 16, 2003, originally requesting that the Court strike Defendants' Answer, or in the alternative, strike Defendants' Motion for Summary Judgment and Response to Plaintiff's Motion for Partial Summary Judgment. Because the cross-motions for summary judgment have already been addressed in a Memorandum Opinion issued on October 2, 2003 [Doc. #106], the Motion for Appropriate Relief is now treated as requesting that the Court strike Defendants' Answer.

narrow fabric products. Defendant Century USA, Inc. ("Century") is a Delaware corporation that sells, but does not manufacture, a wide range of narrow fabric products, including those products manufactured by Interstate as well as products manufactured by other companies. Defendant Murray Fisher is the President and a shareholder of Century.[2]

Interstate and Century have had a business relationship since 1990. Several disputes arose out of that relationship,[3] and on March 1, 2002, Interstate filed a Complaint asserting various state law claims against Century, Inc. and three individual defendants in the Middle District of North Carolina [Doc. #1]. Both parties filed partial motions for summary judgment[4] which were addressed in an October 2, 2003 Memorandum Opinion [Doc. #106].[5] Several claims remain for

---

[2] Defendant John Wild is the Secretary and a shareholder of Century. Defendant George "Nick" Smith is a former shareholder, director, and salesman and a current sales consultant for Century.

[3] For a further recitation of the facts, see this Court's October 2, 2003 Memorandum Opinion, Interstate Narrow Fabrics, Inc. v. Century USA, Inc., 218 F.R.D. 455 (M.D.N.C. 2003).

[4] On January 31, 2003, Interstate moved for partial summary judgment [Doc. #28], and on March 3, 2003, Century and the individual Defendants moved for summary judgment [Doc. #34].

[5] The pending Motion for Appropriate Relief was before the Court when the Court issued its October 2, 2003 Memorandum Opinion. However, this Court did not address the Motion at that time, because the nature of the relief requested was very serious and sufficient information upon which to base a decision was not available.

trial, although the only individual Defendant remaining in the case is Mr. Fisher.[6]

In addition to the cross-motions for summary judgment, this case has a lengthy procedural history, marked by numerous motions and discovery disputes. The history relevant to the pending Motion for Appropriate Relief is as follows: The parties' Joint Rule 26(f) Report was filed and approved on May 16, 2002 [Doc. #13].  The report allowed Century to request leave to amend the pleadings until July 31, 2002, and to provide reports of retained expert witnesses until November 30, 2002.  Additionally, early in the litigation process, on June 3, 2002, a Protective Order was entered covering the confidential information of both parties [Doc. #14].

In November 2002, Century designated two expert witnesses, Hubert W. Wright and Daniel R. Odom, and requested an extension of time to provide the reports of the two retained experts [Doc. #22].  On January 21, 2003, the Court signed an order granting Century's request to extend the report deadline from November 30, 2002 until January 31, 2003 [Doc. #27].  On January 31, 2003, Century did not produce expert reports for Mr. Wright and Mr. Odom, but instead designated and provided a report for a new expert witness, Mr. Bernard Wedge.  In response, on March 12, 2003, Interstate filed a Motion for Order Striking Defendant's Proposed Experts [Doc. #37].  Interstate's position was that the Court

---

[6] Unless specified otherwise, Century and Mr. Fisher will be referred to collectively as Century.

3

should disallow Mr. Wright and Mr. Odom as experts because Century never filed its required expert reports, and that the Court should disallow Mr. Wedge because his designation was untimely.

In that same motion Interstate moved for an Order that Century show cause why it should not be held in contempt for violation of the Protective Order [Doc. # 37]. Interstate alleged that Century's retained expert, Mr. Wedge, was an employee/consultant of Century, and therefore disclosure to him of confidential information that had been received from Interstate during discovery was a violation of the Protective Order.[7] The Court granted Interstate's motion on April 2, 2003 and set a show cause hearing for April 9, 2003.[8] On April 23, 2003, the Court found that Century had violated the Protective Order by disclosing the confidential information to Mr. Wedge who served as an independent contractor/consultant for Century and should be held in contempt [Doc. #62]. It was ordered that (1) Century and Mr. Wedge be permanently enjoined from using any of the confidential information that had been disclosed to Mr. Wedge; (2) Century may not use Mr.

---

[7] Century's counsel provided Mr. Wedge with the following Interstate documents: financial statements, sales-by-style lists (listing every product Interstate sold during a two-year period, including price and quantity information), cost sheets, confidential discovery responses revealing product costs, and confidential deposition testimony of Interstate and Mr. and Mrs. Vailati.

[8] Although the Order entered on April 2, 2003 held that Plaintiff's request to strike Messrs. Wedge, Wright, and Odom as expert witnesses in this case was warranted [Doc. # 54], the Court made it clear at the show cause hearing that this was premature as applied to Mr. Wedge and his ability to serve as an expert would be determined as a result of that hearing. (Show Cause Hr'g Tr. 2, April 9, 2003.)

4

Wedge as an expert witness; (3) Century must pay Interstate's costs and fees related to the matter; and (4) Interstate may depose Mr. Wedge at Century's cost to inquire about his use and dissemination of the confidential information.

On May 12, 2003, Interstate did depose Mr. Wedge. Interstate then filed the present Motion for Appropriate Relief on June 16, 2003 alleging that information learned during the deposition shows that Century made false statements to the Court in its briefing, in its Court-ordered Certifications, and during the show cause hearing [Doc. #68]. Interstate also alleges that Century filed affidavits of Mr. Wedge which contained material misrepresentations.

Meanwhile, on May 30, 2003, Century filed a Motion for Current Counsel[9] to Withdraw and Allow Additional Counsel to be Substituted. The Court granted Century's Motion at a June 30, 2003 hearing, allowing the substitution of new counsel[10] with the condition that the old counsel remain in the case should sanctions be imposed [Doc. #72].

On November 6, 2003, during a telephonic conference with the parties, this Court permitted Interstate to take additional depositions, at its own cost, in order to gather any additional information relevant to the Motion for Appropriate Relief.

---

[9] Century's counsel at the time of the motion was David M. Wooldridge and Robert R. Baugh of Birmingham, Alabama, and Jack B. Bayliss, Jr. of Greensboro, North Carolina. Mr. Wooldridge was acting as primary counsel in the case. Mr. Bayliss was serving as local counsel.

[10] Mack Sperling of Greensboro, North Carolina was allowed as substitute counsel for Century.

5

The parties were asked to file a stipulated briefing schedule after any new depositions were taken. Pursuant to this conference, Interstate again deposed the Defendants and Defendants' former counsel, David Wooldridge. The parties filed a Stipulated Briefing Schedule with the Court on January 8, 2004 [Doc. #114]. In accordance with the Schedule, Interstate filed a Supplemental Brief in Support of its Motion for Appropriate Relief [Doc. #117]; Century filed a Supplemental Brief in Opposition [Doc. #119]; and Interstate filed a Supplemental Reply Brief [Doc. #120]. The analysis that follows considers the supplemental briefs along with the previously filed briefs in addressing Interstate's Motion for Appropriate Relief.

II.

A.

As grounds for its motion, Interstate alleges that Century has made numerous false statements, written and oral, to the Court. The misrepresentations discussed in the first round of briefing[11] primarily concern (a) the nature and scope of Mr. Wedge's work for Century; (b) the security of the confidential information provided to Mr. Wedge within his Century office; and (c) whether Mr. Wedge made any written notes regarding the provided confidential information. Each of these issues will be discussed in turn.

---

[11] The first round of briefing occurred in June and July of 2003 [Docs. #69, #75, #82].

6

1.

Century has repeatedly represented to this Court that Mr. Wedge served Century as an independent contractor whose work was limited strictly to collecting accounts receivable. In Century's Brief Opposing Interstate's Motion to Show Cause [Doc. #51], it states: "Mr. Wedge is not involved in any degree with Century's sale of goods, purchases of goods, or development of sales or marketing." In addition, in its Court-ordered Certifications filed on April 7, 2003 [Doc. #56], Century specifically references Mr. Wedge's affidavits, in which Mr. Wedge affirms that his work with Century does not relate to any "aspects of Century's business that involve any competition with Interstate." (Cert. ¶ 5.) On April 8, 2003, Century made similar representations in its Brief in Support of its Motion for Reconsideration of Order Striking and Precluding Use of Mr. Wedge as Expert Witness [Doc. #59, at 4, 9]. Century also represented these same facts orally to the Court during the April 9, 2003 show cause hearing: "Mr. Wedge's activities [for Century] have nothing to do with matters competitive between these particular parties." (Show Cause Hr'g Tr. 12, April 9, 2003.)

Interstate cites to several portions of Mr. Wedge's May 12, 2003 deposition that indicate that Century's representations concerning the scope of Mr. Wedge's work were false. Since February 2003, Mr. Wedge and Mr. Fisher, Century's President, were involved in discussions about the possibility of Century acting as the product distributor for other narrow fabric suppliers. (Wedge Dep. 6-7.) These

other narrow fabric suppliers are clearly competitors of Interstate. Mr. Wedge has also discussed this plan directly with some of the suppliers, including conversations about pricing information. (Id. at 7.) Mr. Wedge then reported this information to Mr. Fisher, Mr. Wild, and others on the Century sales staff, so that Century could more accurately provide price quotes to potential customers. (Id. at 7-8.) Furthermore, Mr. Wedge testified that, since February 2003, he has advised Century sales staff, including Mr. Fisher, regarding prices it should charge and how the "market would bear" particular prices. (Id. at 9, 14-16.)

Century concedes that its former counsel misrepresented Mr. Wedge's job duties at Century, but alleges that the misstatements were unintentional. In a new affidavit, filed on July 21, 2003, Mr. Wedge states that he told Century's counsel, Mr. David Wooldridge, when they first met that his work was limited to the accounts receivable area. (Wedge Aff. ¶ 3.) He states that he cannot recall whether he told Mr. Wooldridge that he anticipated getting into "other areas of consultation for Century . . . ." (Id.) In addition, Mr. Wedge states that when he signed affidavits stating he was not involved to any degree in areas in which he actually was involved,[12] he thought he was being accurate because he had "no significant involvement" in those areas, but now realizes how such a statement could be "subject to a different interpretation." (Wedge Aff. ¶ 14.) In his affidavit, Mr. Wooldridge states that when the issue regarding Mr. Wedge's job

---

[12] Mr. Wedge is referring to his Second and Third Affidavits.

8

duties arose, he relied on the information in Mr. Wedge's affidavits and did not ask Mr. Wedge if his duties had changed since their initial conversation. (Wooldridge Aff. ¶ 6.)

2.

Interstate also alleges that misrepresentations, or at least misleading statements, were made by Century concerning whether Mr. Wedge kept confidential Interstate information secure from access by other Century employees. In affidavits Century filed with the Court, Mr. Wedge affirmed that he "kept the [i]nformation separate and secured from anyone's access. No one has had any access to the [i]nformation." (Wedge 2d Aff. ¶ 4; Wedge 3d Aff. ¶ 4.) However, in his deposition Mr. Wedge stated that he stored Interstate's confidential documents in an unlocked drawer in Century's office. (Wedge Dep. 31-32.)

3.

Interstate alleges that Century also misrepresented facts concerning whether Mr. Wedge made any notes from Interstate's confidential information. In affidavits Century filed with the Court, Mr. Wedge stated that he "made no notes, correspondence or other documents concerning or referring to, or containing any of the Information, other than the Expert Report previously provided to Interstate under the Court's procedures . . . ." (Wedge 3d Aff. ¶ 3.) Further, when Mr. Wedge was previously served with a *subpoena duces tecum*[13] for production of

---

[13] The subpoena was served on February 10, 2003 [Doc. #38, Ex. 6].

9

any notes based on Interstate's confidential information, Century objected, stating "there are no notes" [Doc. #69, Ex. C]. In contrast, at his deposition, Mr. Wedge testified that he took "three or four full 8 ½ by 11 pages of notes about costing information." (Wedge Dep. 31.) Mr. Wedge's testimony as to what he did with the notes is inconsistent. He initially states that he gave the notes to Mr. Wooldridge (Wedge Dep. 25-26); then later states that he does not recall what he did with the notes (Id. at 33); and finally, states that he did <u>not</u> give the notes to Mr. Wooldridge and "probably just stuck them in [his] pocket and left, and then probably threw them away (Id. at 34)." Mr. Wedge also states that he never searched for these notes. (Id.)[14]

B.

The second round of briefing[15] on this issue focuses on Interstate's assertion that Century knew that misleading documents had been filed with the Court, and not only failed to correct these statements, but also attempted to conceal them through Mr. Wooldridge's withdrawal from the case. Each argument is addressed below.

---

[14] Interstate suggests that Mr. Wedge's failure to search for any notes is particularly troubling, given the previous *subpoena duces tecum* requesting production of any such notes.

[15] The second round of briefing occurred pursuant to the Stipulated (supplemental) Briefing Schedule filed with the Court on January 8, 2004 [Doc. #114].

10

1.

Interstate first alleges that the supplemental depositions of Mr. Wild and Mr. Fisher, as well as the deposition of Mr. Wooldridge, provide evidence that the Defendants were aware of the misrepresentations made regarding Mr. Wedge's sales-related activities at Century. Interstate claims that although Defendants might not have assisted their counsel in "preparing" the filings, they were aware of their "misleading and false" contents shortly after they were filed. (Pl.'s Supp. Br. 3.) Neither Mr. Wild nor Mr. Fisher, however, recalled seeing the papers filed in response to Interstate's show cause motion, including the responsive brief and the affidavit of Mr. Wedge, which stated that he had absolutely no involvement in the sales at Century. (Wild Dep. 9, 14-16; Fisher Dep. 20.) Although it is highly likely that Defendants received copies of these documents soon after they were filed,[16] there is no evidence that they actually reviewed the documents or read the statements regarding Mr. Wedge's involvement in sales at that time.

2.

Interstate claims, however, that even if Mr. Wooldridge and Century were not aware of the discrepancy between their filings and Mr. Wedge's affidavit at the time, they were certainly aware of it when Mr. Wooldridge withdrew as Century's counsel. In fact, Interstate contends that Mr. Wooldridge's withdrawal was a

---

[16] Mr. Wild, Mr. Fisher and Mr. Wooldridge all testified that Defendants would customarily receive and review copies of filings made by Wooldridge. (Wild Dep. 7-8; Fisher Dep. 11-13; Wooldridge Dep. 11-12.)

11

deliberate attempt by Mr. Wooldridge and Century to conceal these misrepresentations from the Court.[17]

Interstate is correct in doubting the decision of Mr. Wooldridge to simply withdraw without first taking steps to cure his misrepresentations to the Court himself. Mr. Wooldridge certainly should have done so. However, the information regarding Mr. Wedge's involvement in sales at Century was learned at Mr. Wedge's May 12, 2003 deposition by both Mr. Wooldridge and Interstate. (Wooldridge Dep. 69.) Thus, there was no effort by Mr. Wooldridge to conceal this information from Interstate. Additionally, Mr. Wooldridge could reasonably have anticipated that this new information would be the basis of just such a motion as was filed by Interstate only two weeks after his request to withdraw.[18] Thus, it has also not been shown that Mr. Wooldridge's withdrawal was a deliberate effort by him to mislead the Court.

Additionally, it does not appear that Mr. Wooldridge's withdrawal was a deliberate action by Century to deceive the Court since Interstate was fully **informed as to the obvious reasons**. Rather, when advised of Mr. Wooldridge's decision to withdraw, both Mr. Fisher and Mr. Wild testified that they vehemently

---

[17] The Motion to Withdraw as counsel stated only that Mr. Wooldridge was withdrawing as Defendants' counsel for "good cause."

[18] Interstate's Motion for Appropriate Relief was already filed and had been reviewed by this Court by the time the hearing was held regarding Mr. Wooldridge's Motion to Withdraw. (Withdrawal Hr'g Tr. 6, June 30, 2003.)

12

opposed his decision.[19]

### III.

Federal district courts have the inherent power to control and protect the administration of court proceedings. White v. Raymark Indus., 783 F.2d 1175, 1177 (4th Cir. 1986). It is well-established that district courts have the power to impose appropriate sanctions for bad faith litigation conduct. See United States v. Shaffer Equip. Co., 11 F.3d 450, 462 (4th Cir. 1993); Sanderson v. Boddie-Noell Enter., Inc., 227 F.R.D. 448, 451 (N.D. Va. 2005) ("[A] district court can, upon a finding that a party has willfully violated a rule of conduct and/or procedure, impose an appropriate sanction."). Specifically, "[u]nder the inherent power, a court may issue orders, punish for contempt, vacate judgments obtained by fraud, conduct investigations as necessary to exercise the power, bar persons from the courtroom, assess attorney's fees, and dismiss actions." Shaffer, 11 F.3d at 462. "This power is organic . . ." and not defined through reference to a specific rule or statute. Id. at 461.[20] However, because this inherent power is not subject to

---

[19] Although Mr. Wild is not clear in his deposition whether he was advised of the exact reason for Mr. Wooldridge's withdrawal, he did testify that he knew there was a problem and that Mr. Wooldridge and the Judge "did not see eye-to-eye." (Wild Dep. 19-21.) Mr. Fisher, however, remembered very clearly that Mr. Wooldridge's withdrawal was related to a conflict between Mr. Wedge's deposition testimony and their representation that Mr. Wedge was not involved in sales at Century. (Fisher Dep. 26-29, 35, 41.)

[20] Thus, Century's contention that the relief requested by Interstate may only be brought pursuant to a proper Rule 11 motion is incorrect. "'A court may invoke its inherent power in conjunction with, or instead of, other sanctioning provisions,'

13

direct regulation, it must be exercised "with the greatest restraint and caution, and then only to the extent necessary," particularly in the case of dismissal, the most severe sanction available. Id. at 461-62.

A court's discretion to enter the sanction of dismissal must be balanced against a party's rights to a "fair day in court." Id. Thus, before entering a dismissal sanction, a court should consider and balance the following factors: (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that we seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest. Shaffer, 11 F.3d at 462-63.[21]

Interstate's requested relief – striking Century's answer to the complaint – is equivalent to an entry of judgment for Interstate. Application of the Shaffer

---

such as Rule 11 . . . ." Crabtree v. Webb, 1998 WL 34064940, at *3 (M.D.N.C. Oct. 1, 1998) (quoting In re Weiss, 111 F.3d 1159, 1171 (4th Cir. 1997)).

[21] In cases involving discovery disputes, this Court has previously considered similar factors: (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice to the adversary from the noncompliance; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions. Green v. John Chatillon & Sons, 188 F.R.D. 422, 423-24 (M.D.N.C. 1998) (citing Mutual Fed. Sav. & Loan Ass'n v. Richards & Assoc., 872 F.2d 88, 92 (4th Cir. 1989)). The application of either set of factors yields the same results in this case.

14

factors indicates that such a drastic sanction is not warranted in this case. First, Interstate has not shown the amount or type of prejudice needed to justify entering judgment against Defendants. Any prejudice suffered by Interstate involves the protection of its confidential proprietary information, and not its ability to prove its claims. This type of prejudice should be distinguished from the prejudice resulting where a party has refused to provide discovery or has destroyed relevant evidence. See, e.g., Silvestri v. Gen. Motors Corp., 271 F.3d 583, 592-93 (4th Cir. 2001) (holding dismissal not unduly harsh where plaintiff destroyed evidence, severely prejudicing defendant's ability to defend); Green v. John Chatillon & Sons, 188 F.R.D. 422, 424 (M.D.N.C. 1998) (finding dismissal to be an appropriate sanction due to the extreme circumstances presented when plaintiff repeatedly refused to comply with discovery requests and court-ordered discovery).

Additionally, the evidence suggests that the misrepresentation of Mr. Wedge's sales-related activities by Mr. Wooldridge and Defendants was inadvertent.[22] Mr. Wooldridge testified that at the time of the filings, he believed that Mr. Wedge's work was limited to the accounts receivable area. (Wooldridge Aff. ¶ 3.) Mr. Wedge's affidavit confirms that this was the information he gave to Wooldridge at that time. (Wedge Aff. ¶ 3.) When the issue arose again Mr.

---

[22] Although a sufficient amount of care was not taken by Mr. Wooldridge and Century regarding the notes taken by Mr. Wedge and the storage of Interstate's confidential information, there is no evidence that any misrepresentation made to this Court on these issues was made intentionally.

15

Wooldridge mistakenly relied on Mr. Wedge's previous representation without asking him whether his job duties with Century had changed. (Id. at ¶ 6.) Thus, although Mr. Wooldridge erred in not informing himself of Mr. Wedge's current activities with Century before making a representation to the Court, there is no evidence of any intention to deceive.

Furthermore, entering judgment on behalf of Interstate by striking Century's answer is contrary to the public's interest in having cases adjudicated on the merits. In <u>Shaffer</u>, the Fourth Circuit reversed the district court's order of dismissal – initially granted as a sanction for misrepresentations to the court – because the attorney's misconduct could more effectively be addressed through lesser sanctions that would not "frustrate the resolution on the merits of a case which itself has strong policy implications." 11 F.3d at 463. Because less severe sanctions are also available in this case to address any harm caused by Century and Mr. Wooldridge's actions, striking Century's answer is not an appropriate exercise of the Court's inherent, discretionary authority.

The Court will, however, consider whether lesser sanctions are necessary to address any harm caused to Interstate and the Court by Century's actions. Intentional, or even reckless, misrepresentations to a court is bad faith behavior that the Court has a clear interest in deterring. "[O]ur adversary system depends on a most jealous safeguarding of truth and candor." <u>Shaffer</u>, 11 F.3d at 463. On remand, the district court in <u>Shaffer</u> analyzed a court's inherent powers with

16

Case 1:02-cv-00146-NCT   Document 123   Filed 02/22/06   Page 16 of 19

respect to attorney misconduct:

> The Court has the inherent authority to discipline all attorneys who appear before it and the inherent power extends to the full range of litigation abuses . . . Therefore, this Court possesses the inherent authority to fashion a sanction for attorneys violating the duty of candor in a manner it finds appropriate.

U.S. v. Shaffer, 158 F.R.D. 80, 87 (S.D. W.Va. 1994) (internal citations omitted). That court then ordered each attorney who had violated the duty of candor to the court to pay a fine from their personal funds.

In this case Mr. Wooldridge is an attorney at law who has a duty of candor to this tribunal. See Chambers v. NASCO, Inc., 501 U.S. 32, 44-45, 111 S.Ct. 2123 (1991) (explaining the broad general duty of candor and good faith required to protect the integrity of the judicial process); Tiverton Bd. of License Comm'rs v. Pastore, 469 U.S. 238, 240, 105 S.Ct. 685 (1985) ("It is appropriate to remind counsel that they have a continuing duty to inform the court of any development which may conceivably affect the outcome of the litigation.") (internal citations omitted); Shaffer, 11 F.3d at 458 (holding that counsel's repeated failure to advise the court of information that could affect the litigation's outcome was a violation of the general duty of candor that attorneys owe officers of the court). Mr. Wooldridge clearly, although likely unintentionally, misrepresented Mr. Wedge's sales-related activities in several filings and at the show cause hearing. Additionally, Mr. Wooldridge was aware that such a misrepresentation was material because it related directly to the ability of Mr. Wedge to serve as an expert

17

for Century, and also the disclosure of confidential Interstate information in violation of the Protective Order. Once apprised of the incorrectness of his statements to the Court, Mr. Wooldridge did not attempt to cure his mistake by taking affirmative action to inform the Court, but rather withdrew from the case. At no time did Mr. Wooldridge take it upon himself to cure the misrepresentation he had made to the Court.

However, there is no evidence that Mr. Wooldridge's action of withdrawing as Century's attorney was an attempt to conceal his mistakes from the Court or Interstate. Representatives from Interstate conducted Mr. Wedge's deposition and heard the statements regarding Mr. Wedge's sales-related activities at Century along with Mr. Wooldridge. Additionally, at the time of the hearing on Mr. Wooldridge's motion to withdraw, the Court had already been apprised of the inconsistencies by Interstate's current motion. Mr. Wooldridge clearly understands the mistakes he made in this case, and although an affirmative action explaining his misstatements would be preferred to simply withdrawing from the case, it does not appear that sanctions of Mr. Wooldridge are necessary at this time.

In addition, there is not sufficient evidence that the Defendants made any false representations or were aware at the time that the false representations were being made to the Court. Defendants have already been precluded from offering any expert testimony and assessed over $9,000 in costs and fees for their violation of the protective order. Additional sanctions against Defendants are not

18

necessary at this time.

IV.

For the foregoing reasons, Interstate's motion for appropriate relief will be DENIED.

This the day of February 22, 2006

                                               /s/ N. Carlton Tilley, Jr.
                                              United States District Judge